

**FILED**

NOV 0 6 2018

Clerk, U.S. District Court
District Of Montana
Missoula

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| ESTATE OF KIRK ANTHONY FOSTER, through KELLY M. FOSTER, Personal Representative for the Estate of Kirk Anthony Foster, and KELLY M. FOSTER, as an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN MARINE SVS GROUP BENEFIT PLAN, UNITED OF OMAHA LIFE INSURANCE COMPANY, AMERICAN MARINE CORP., and JOHN DOES 1-3,<br><br>Defendants. | CV 17–165–M–DLC<br><br><br>ORDER |

Before the Court is American Marine SVS Group Benefit Plan and

American Marine Corporation's ("American Marine") Motion to Dismiss (Doc. 8),

and Defendant United of Omaha Life Insurance Company's ("United") Motion to

Dismiss (Doc. 11). The Estate of Kirk Anthony Foster and Kelly M. Foster ("Mr.

Foster" and "Ms. Foster," together "Plaintiffs") bring this action pursuant to 29

U.S.C. § 1132(a), the Employee Retirement Income Security Program's

("ERISA") civil enforcement provision and 28 U.S.C. § 1331. Plaintiffs allege

that Defendants wrongfully denied Ms. Foster life insurance benefits owed to her

1

as Mr. Foster's named beneficiary. For the reasons explained below, the Court denies American Marine's Motion (Doc. 8) and grants in part and denies in part United's Motion (Doc. 11).

## BACKGROUND

Ms. Foster and the estate of Mr. Foster claim that United wrongfully denied payment under Mr. Foster's life insurance policy after his death in June of 2016. Mr. Foster was an employee of American Marine and was enrolled in a group benefits plan with United. (Doc. 4 at 3–4.) The Plan provided Mr. Foster with both long term disability and life insurance. (*Id.* at 4.) On February 1, 2016, Mr. Foster became permanently disabled from esophageal cancer. (*Id.* at 5.) United paid the long term disability policy in full on February 15, 2016. Mr. Foster died at the end of June and United subsequently denied to pay Ms. Foster's claim. (*Id.* at 2, 13–14.)

United contends that it denied Ms. Foster's claim because American Marine terminated Mr. Foster's coverage and ceased paying premiums as of May 1st. (Doc. 12 at 8.) In early July, American Marine produced a document it claims to have sent Mr. Foster on April 19, 2016, explaining Mr. Foster's option to convert his group coverage into an individual life insurance policy and an application for doing so. Plaintiffs maintain that Mr. Foster never received any word that his employment had been terminated or that his life insurance policy would soon

2

expire. (Doc. 4 at 7.) Nor did Mr. Foster receive a copy of American Marine's April 26th notification sent to United, terminating Mr. Foster's coverage. (Doc. 4 at 8.)

Nevertheless, United charged and received a premium payment for Mr. Foster's life insurance on May 1st. (Doc. 4 at 8.) Plaintiffs claim that through the month of June, United recognized Mr. Foster as a participant in the Plan, but sometime in June credited back payment to American Marine and recorded a "retroactive change to 05/01/2016." (Doc. 4 at 9.) United claims it is "standard procedure" whenever it receives notice of cancellation late in the billing cycle to charge the policyholder as planned and then "credit back" any surplus payment. (Doc. 12 at 10.) Plaintiffs claim that American Marine unilaterally terminated his life insurance coverage without explanation or notification, failed to inform Mr. Foster of his right to convert his group policy into an individual policy, and that United recognized his status as a plan participant throughout the month of June. For these reasons, Plaintiffs argue that United wrongfully denied payment of Ms. Foster's claim.

## LEGAL STANDARD

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

3

Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.* On a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Kneivel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Legal conclusions, on the other hand, are not entitled to the same presumption of truth. Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

When ruling on a motion to dismiss, a court generally cannot consider material outside the complaint. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307

F.3d 1119 (9th Cir. 2002). Nevertheless, a court may consider exhibits submitted along with the complaint where the exhibits are: (1) specifically referred to in the complaint; (2) central to the plaintiffs claim; and (3) no party questions the authenticity of the attached documents. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). This rule is designed to prevent plaintiffs from "deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

## DISCUSSION

Plaintiffs' Amended Complaint raises five claims. The first three allege that Defendants failed to provide a benefit under the plan. (Doc. 4 at 11–17.) Count V[1] arises under a Hawaii statute that regulates notice of a conversion right, and Count VI alleges a breach of fiduciary duty. American Marine moves to dismiss claims five and six, arguing that these claims arise under Hawaii law and are therefore preempted by ERISA. (Doc. 9 at 8.) United moves to dismiss all claims, arguing that claims one through three are contrary to the clear terms of the policy and the latter two are preempted by ERISA. As explained more fully below, the Court will dismiss claims one and two, and will dismiss claim six as it applies to

---

[1] The fourth claim raised by Plaintiffs is labelled as Count V. Plaintiffs' Amended Complaint (Doc. 4) does not contain a Count IV. Nevertheless, to avoid confusion, when the Court refers to the claims individually, the Court will refer to each claim as it appears in the Amended Complaint.

5

United. The Court will discuss each count separately.

## I. Count I: Failure to Provide a Plan Benefit—Waiver

Plaintiffs argue that Mr. Foster's life insurance policy should not have been terminated, because he was entitled to a continuation of his life insurance benefits due to his total disability, and that any nonpayment from American Marine is irrelevant because he was entitled to the premium waiver. (Doc. 4 at 12–13.) United argues that this claim should be dismissed because Mr. Foster did not qualify for the premium waiver because he did not complete the nine-month disability elimination period, and because American Marine's nonpayment terminated his coverage. (Doc. 20 at 3.) The Court agrees.

The premium waiver is a benefit conditioned upon four predicate requirements, one of which is the completion of a nine-month disability elimination period. [2] (Doc. 1-1 at 13.) A plan participant gains the benefit of

---

[2] The premium waiver clause provides:

**Continuation of Life Insurance Benefits Due to Total Disability (Waiver of Premium)**
If You are Totally Disabled, Your Life Insurance Benefits will be continued without payment of premium provided:

(a) the Total Disability began while You were insured under this Policy;
(b) the Total Disability began before you reached age 60;
(c) You have completed Your disability elimination period (described below); and
(d) Proof of the Total Disability is given to Us as described in the following paragraphs.
. . .

**Disability Elimination Period**

Subject to continued payment of premium, Your insurance will continue during the disability elimination period as long as You remain Totally Disabled. The disability elimination period is the 9 consecutive months of Total Disability beginning on the date You first become Totally Disabled.

If You die during the disability elimination period, and We determine that You were Totally Disabled on the day

6

ongoing coverage during the disability elimination period, "[s]ubject to continued payment of premium." (*Id.* at 14.) Elsewhere, the policy explains that coverage terminates "the day any premium contribution for Your insurance is due and unpaid." (*Id.* at 13.)

Even though the parties dispute whether Mr. Foster was covered for the month of May, the parties agree that American Marine did not pay a premium on Mr. Foster's behalf for the month of June. Construing the facts in the light most favorable to Mr. Foster, this indicates that his policy lapsed on June 1st at the latest. According to the terms of the policy, at the time of Mr. Foster's death he was not entitled to a premium waiver, was no longer within his "disability elimination period," and no longer held a valid insurance policy, regardless of whether United recognized him as a plan participant elsewhere in its record keeping. Therefore, Plaintiffs' claim that United denied Mr. Foster a benefit is inapposite.

Plaintiffs make two additional arguments—neither of which is persuasive. Plaintiffs argue first that United's allegations that Mr. Foster did not have coverage because American Marine stopped paying Mr. Foster's premium does not preclude Mr. Foster from coverage, rather, it gives rise to a crossclaim between Defendants. This argument is foreclosed by the terms of the Plan. (*See*

before the date of Your death, benefits under this Policy will be paid to Your beneficiary.

Doc. 1-1 at 13.) Plaintiffs argue next that United had a fiduciary duty to interpret the waiver clause in Mr. Foster's best interests. United responds that its fiduciary duties impose only an obligation to act "in accordance with the documents and instruments governing the plan." (Doc. 20 at 3 (quoting 29 U.S.C. § 1104).) The Court agrees. The terms of the plan are clear: when American Marine failed to make a June payment, Mr. Foster's coverage lapsed. Accordingly, the Court will dismiss this claim.

## II.    Count II: Failure to Provide a Plan Benefit—Grace Period

Plaintiffs argue that United wrongfully denied Ms. Foster's claim in June because the policy provides a 31-day grace period in the event of nonpayment. (Doc. 4 at 14–15.) United argues that the grace period is inapplicable to individual plan participants because plan participants are under no obligation to pay premiums. (Doc. 12 at 16.) The Court agrees.

The summary plan description ("SPD") contains no "grace period" provisions. (*See* Doc. 1-1.) The SPD otherwise explains the rights and obligations of the insurer, the policyholder, and the plan participant. (*See, e.g.*, Doc. 1-1 at 13.) The SPD also contains no information about how and when payments shall be made. (*See* Doc. 1-1.) However, the Group Policy that exists between United and American Marine does contain terms concerning payment of premiums and contains a clause that offers a grace period in event of nonpayment for the policy

as a whole. (*See* Doc. 12-1 at 2–3.) The Policy also provides that payments are made on behalf of individual plan participants by American Marine as a single monthly payment. (*Id.*) Therefore, United's reading of the policy is correct. Because Mr. Foster had no individual obligation to make a payment on his policy to keep it active—only American Marine had this obligation—Mr. Foster cannot claim the benefit of the grace period. For this reason, the Court concludes that Plaintiffs have not stated facts that adequately support a plausible claim to relief, and will dismiss this claim.

### III.   Count III: Failure to Provide a Plan Benefit—Conversion Privilege

Plaintiffs claim that United wrongfully denied Mr. Foster the option of converting his policy from the group policy to an individual policy, by failing to notify him of this right. (Doc. 4 at 16–17.) United claims that Mr. Foster was not entitled to any notice above and beyond the notice provided in the SPD (*see* Doc. 1-1 at 16–17), and to the extent that ERISA imposes any additional disclosure and communication requirements, these obligations rest with the Plan Administrator rather than the insurer. (Doc. 12 at 18–19.) United also asserts that even though no notice was required, American Marine did inform Mr. Foster of his rights in April. (Doc. 12 at 18, n.6.) Because this is a question of fact, and the Court must construe the allegations in the Complaint as true, the Court assumes at this stage of litigation that Mr. Foster did not receive any notice of his conversion right.

9

The Conversion Privilege is triggered when coverage under the group life policy ends. (Doc. 1-1 at 20.) To exercise the privilege, the former plan participant must submit a written application and first conversion premium "within 31 days after your life group insurance ends." (Doc. 1-1 at 21.) However, if the former plan participant dies "within the 31-day period after insurance ends," the policy states that United "will pay the amount of group life insurance" the participant would have been entitled to receive. (*Id.*)

Here, construing the facts in the light most favorable to Mr. Foster, Mr. Foster's conversion privilege began—and his 31-day conversion window started ticking—on June 1st. This was the first date his portion of the premium was due and unpaid, effectively ending his coverage. (Doc. 1-1 at 13.) When Mr. Foster died on June 24th, he was within the window provided to him to exercise this privilege. United's assertion that Mr. Foster failed to exercise the privilege is immaterial—the policy clearly provides that it will pay any benefits to which a participant is entitled in the event that the plan participant dies during the 31-day conversion window. Arguably, when Ms. Foster's claim was denied in July, United failed to provide this benefit. For this reason, Plaintiffs have stated a claim to relief, and Defendants' motion to dismiss this claim is denied.

## IV.    Count V: Hawaii Right to Notice Claim

Plaintiffs allege that Mr. Foster was entitled to notice of his right to convert

his life insurance policy under the Plan into an individual life policy at the time he became ineligible for continued enrollment in the group Plan. He alleges that he never received notice of this right and is entitled to an extension under Hawaii law.[3] Hawaii law provides that where an individual is entitled to a conversion right under a group plan and does not receive notice of his or her conversion right within fifteen days of the policy's expiration, an insurer must provide "an additional period within which to exercise the right." Hawaii Rev. Stat. Ann. § 431:10D–214. This extension period will continue for fifteen days after notice is given but will not exceed sixty days after the expiration period provided in the policy.[4]

Defendants argue that this statute does not apply to the Plan because federal ERISA law preempts a Hawaii statute as it "relates to" an ERISA welfare plan.

---

[3] The life policy is governed by Hawaii law. (Doc. 12-1 at 12.)
[4] The full text of the statute provides:

§ 431:10D-214. **Notice to insured regarding conversion right**

If any individual insured under a group life insurance policy delivered in this State becomes entitled under the terms of the policy to have an individual policy of life insurance issued to the individual without evidence of insurability, subject to making of application and payment of the first premium within the period specified in the policy, and if the individual is not given notice of the existence of such right at least fifteen days prior to the expiration date of such period, then, in such event the individual shall have an additional period within which to exercise the right, but nothing herein shall be construed to continue any insurance beyond the period provided in the policy. This additional period shall expire fifteen days next after the individual is given such notice but in no event shall the additional period extend beyond sixty days next after the expiration date of the period provided in the policy. Written notice presented to the individual or mailed by the policyholder to the last known address of the individual or mailed by the insurer to the last known address of the individual as furnished by the policyholder shall constitute notice for the purposes of this section.

(Doc. 9 at 8; 12 at 22–23.) Additionally, United claims that Mr. Foster did receive notice of this right in the SPD, never exercised this right, and that the Hawaii statute expressly provides that it does not "continue any insurance beyond the period provided in the policy." United argues that American Marine submitted payment until April 30th which is when coverage concluded. (Doc. 12 at 25–26.) United's final three arguments confuse the issue: whether the Hawaii statute applies to Mr. Foster's case is a question of law. How the Hawaii statute applies to the particulars—whether Mr. Foster actually received notice, and when the statute's 15 or 60-day window should have kicked in—is a question of fact that this Court cannot resolve at this stage of litigation. The only question before the Court is whether a Hawaii notice statute that imposes a requirement on an ERISA insurance policy is preempted by federal law. For the reasons explained below, the Court concludes that the statute is not preempted.

Employee benefit plans are governed by ERISA. 29 U.S.C. § 1002(3); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 939–40 (9th Cir. 2003). ERISA preempts any state law action that "relates to" an employee benefit plan. 29 U.S.C. § 1144(a); *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 875 (9th Cir. 2001). "ERISA contains one of the broadest preemptive clauses ever enacted by Congress." *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 817 (9th Cir. 1992); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–

46 (1987) (stating that ERISA's preemption clause is deliberately expansive). Its purpose is to "ensure[ ] that the administrative practices of a benefit plan will be governed by only a single set of regulations." *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1120 (9th Cir. 2008) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)).

Nevertheless, certain regulatory laws are exempt from ERISA's broad preemptive scope. ERISA contains a saving clause that permits states to retain regulatory authority over "insurance, banking, or securities." *Id.* § 1144(b)(2)(A). To "regulate insurance" and fall within the saving clause, the Supreme Court has established a two-prong test: first, the state law must be specifically directed towards entities engaged in insurance; second, the state law must substantially affect the risk pooling arrangement between the insurer and the insured. *Ky. Ass'n of Health Plans v. Miller*, 538 U.S. 329, 341–42 (2003). "So, although ERISA has broad preemptive force, its 'saving clause then reclaims a substantial amount of ground.'" *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan*, 856 F.3d 686, 692 (9th Cir. 2017) (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 365 (2002)).

American Marine argues that the Hawaii statute does not fall within the saving clause, because it fails the first prong of *Miller*. (Doc. 21 at 3.) American Marine cites to *Howard v. Gleason Corp.*, 901 F.2d 1154 (2d Cir. 1990), which

13

held that a similar New York notice statute was preempted by ERISA because it related to an employee benefit plan and did not satisfy the pre-*Miller* McCarran-Ferguson test, *id.* at 1161, which was overruled in *Miller*. *Kentucky Ass'n of Health Plans, Inc.*, 538 U.S. at 339–40. United similarly urges the Court to follow *Howard* and a number of district courts that have concluded that similar state notice laws are preempted. *See Haymaker v. Reliance Standard Life Ins. Co.*, 2016 WL 3258439 (E.D. Pa. June 14, 2016); *Terry v. Northrop Grumman Health Plan*, 989 F. Supp. 2d 401, 408–10 (M.D. Pa. 2013); *Estate of Travato v. Marcal Mfg. LLC*, 2011 WL 4550169, at *4 (D.N.J. 2011); *Noel v. Laclede Gas Co.*, 612 F. Supp. 2d 1051, 1059–60 (E.D. Mo. 2009); *Rogers v. Rogers & Partner*, 2009 WL 5124652, at *9–10 (D. Mass. 2009); *Strohmeyer v. Metropolitan Life Ins. Co.*, 365 F. Supp. 2d 258, 260–61 (D. Conn. 2005).

*Howard* dealt with a nearly identical right-to-notice statute and concluded that the statute was not preempted by ERISA, but on grounds that are not relevant under today's test. *See Howard*, 901 F.2d at 1156, n.1. In *Howard*, the plaintiff argued that New York's notice requirement was not preempted by ERISA because it did not conflict with any of ERISA's own notice requirements. *Id.* at 1158. According to the plaintiff, there was no reason to "disable[e] it from attempting to address uniquely local social and economic problems." *Id.* (citing *Fort Halifax Packing Co.*, 482 U.S. at 19). The Second Circuit first observed ERISA's

expansive preemption provision. *Id.* at 1156. ERISA preempts any state laws that "relate to an employee benefit plan." *Id.* at 1157. The court noted that "the term 'relate to' is to be given its broad common-sense meaning." *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)). The court determined that a state statute providing notice relates to the group benefit plan because it created rights and obligations with respect to the insured, the insurer, and the policyholder (here, the employer). *Id.* The court also observed that without preemption "employers with multi-state operations would be faced with different notice obligations in different states" and that this was "precisely the 'patchwork scheme of regulation' . . . that ERISA was designed to avoid." *Id.* at 1158.

Having concluded that the statute triggered ERISA preemption, the court then turned to whether it fell within the narrow saving clause. *See id.* Applying the pre-*Miller* criteria, the Court first looked at whether the law was "specifically directed toward [the insurance] industry" and next looked at whether statutory notice imposed practices constituting "the business of insurance." *Id.* Specifically, "whether the practice has the effect of transferring or spreading a policyholder's risk[,] . . . whether the practice is an integral part of the policy relationship between the insurer and the insured[,]. . . [and] whether the practice is limited to entities within the insurance industry." *Id.* (quoting *Pilot Life*, 481 U.S. at 48–49)). The court concluded first that the statute was not directed *specifically* toward entities

15

engaged in insurance because it created an obligation (notifying the employee of their right to convert) that could be fulfilled by the policyholder (the employer) who was not engaged in the business of insurance. As to the next step, the court observed that the first factor was "arguably satisfied" because "notice of the conversion option can play an important role in the employee's decision whether to exercise the option," thereby having at least an indirect impact "in determining who will bear the risk upon termination of the group policy." *Id.* at 1158–59. However, the court observed that the final two factors were not present, and determined that the statute was not saved from ERISA preemption. *Id.* at 1159.

Citing to *Howard*, a number of district courts post-*Miller* have concluded that similar notice statutes are likewise preempted. *Trovato* relied on *Howard*'s reasoning to determine that New Jersey's notice statute was not *specifically* directed at insurers, and concluded—without justification or explanation—that notice statutes "cannot be said to substantially affect the risk pooling" relationship. *Estate of Trovato*, 2011 WL, at \*4. Another court determined that a Massachusetts notice statute was preempted, again, relying on *Howard*'s reasoning under *Miller*'s first prong, and concluding that a notice statute does not *alter the risks* for which the insurer and the insured have contracted. *Rogers*, 2009 WL, at \*10 (emphasis added) (citing to *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 569–70 (11th Cir 1994) (concluding that a "statute requiring notice proper to

16

cancellation of insurance policy does not affect the *apportionment* of risk among the parties to the contract." (emphasis added)).) A Pennsylvania court determined that a Pennsylvania notice statute was not saved from preemption, citing to *Trovato* as persuasive because the two statutes were "nearly identical." *Terry*, 989 F. Supp. 2d at 410. Though the court recognized *Miller*'s two-part test, the court failed to apply it, and instead concluded that if claims under a state notice statute "were not preempted by ERISA, the potential would exist for inconsistent and conflicting results in the regulation of employee benefit plans." *Id.* As to *Miller*'s second prong, a subsequent Pennsylvania court recognized that a statute requiring notice "may require the insurer to insure a person for longer than the policy provides," but concluded that "a statute which may require an extension of the policy does not *substantially* affect the insurer-insured relationship." *Haymaker*, 2016 WL, at *3 (citing to *Meyers v. Metro. Life Ins. Co.*, 2013 WL 820591 (E.D. Pa. Mar. 6, 2013) (concluding that Pennsylvania's notice statute was saved from preemption)).

For a multitude of reasons, the cases cited by United and American Marine are unpersuasive. While there is universal agreement that a notice statute "relates to" an ERISA benefits plan and therefore triggers preemption, Defendants fail to cite a single case that employs a thorough analysis of *Miller*'s test consistent with the Ninth Circuit's articulation of it. Instead, these cases engage in cursory analysis, *see Estate of Trovato*, 2011 WL, at *4, irrelevant reasoning, *see Terry*,

17

989 F. Supp. 2d at 410; *Noel*, 612 F. Supp. 2d at 1060 (concluding that a notice statute was not saved from preemption but failing to apply *Miller*); *Strohmeyer*, 365 F. Supp. 2d at 260 (the same), arguments foreclosed in the Ninth Circuit, *see Estate of Trovato*, 2011 WL, at *4, or confuse risk pooling, risk transfer, and risk allocation, *see Rogers*, 2009 WL, at *10. Setting these cases aside, the Court is left with *Haymaker*'s bare assertion that a similar notice statute is not saved from preemption because notice has only an *insubstantial* effect on the risk pooling relationship. 2016 WL, at *3.

Notwithstanding, the Court is more persuaded by another Pennsylvania court's thorough treatment of *Miller*. *See Meyers*, 2013 WL, at *4. In *Meyers*, the court concluded that *Miller*'s first prong was satisfied because both the statutory language and legislative purpose indicate that it "applies only in the insurance context, and imposes notice requirements only on policyholders or insurers of group life insurance policies; that is, it bestows rights only on insured parties as it pertains to their insurance policies." *Id.* at *3. As for *Miller*'s second prong, the court concluded that the notice statute "substantially affects the risk pooling arrangement," because:

> The statute essentially writes an additional term into insurance
> policies that may require the insurer to insure a person for longer than
> the policy provides. The effect of the statute is to lessen the risk
> associated with an insured not knowing her conversion rights, and
> distribute some of that risk to the insurer or policyholder. The Court
> finds that a statute which extends the time period in which an insured

18

must pay benefits substantially affects the risk pooling arrangement between the insurer and the insured. Therefore, the second Miller requirement is also fulfilled.

*Id.* at *4.

With this persuasive guidance in mind, the Court will turn now to Hawaii's notice statute.

## A. Is Hawaii's Notice Statute Specifically Directed Towards Entities Engaged in Insurance?

"A law is specifically directed toward entities engaged in insurance if it is grounded in policy concerns specific to the insurance industry." *Orzechowski*, 856 F.3d at 693 (quoting *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 372 (1999). In *Orzechowski*, the Ninth Circuit expressly rejected the argument that this requirement was to be read "literally." Boeing had argued that a California statute invalidating discretionary clauses did not fall within the saving clause because it applied to Boeing, "a leading aerospace company" (and non-insurance entity) and its Master Plan was not "insurance." *Id.* at 693. While the court noted that this argument was not "without some logic" the court concluded that this reasoning was inconsistent with *Miller* and with the Ninth Circuit's opinion in *Standard Insurance Company v. Morrison*, 584 F.3d 837, 842 (9th Cir. 2009) ("That an insurance rule has an effect on third parties does not disqualify it from being a regulation of insurance."). *Id. Orzechowski* reiterated that "[r]egulations directed toward certain entities will almost always disable other entities from doing, with

19

the regulated entities, what the regulations forbid; this does not suffice to place such regulation outside the scope of ERISA's saving clause." *Id.* (quoting *Miller*, 538 U.S. at 332) (internal quotation marks omitted). Thus, the pivotal inquiry is not the nature of the business with which the entity is engaged, but the object of its regulation: "ERISA's saving clause saves laws that regulate *insurance*, not *insurers."* *Id.* (quoting *Miller*, 538 U.S. at 334) (internal quotation marks omitted, emphasis in original). Citing to *Morrison*, *Orzechowski* concluded that Boeing's "too clever," hairsplitting argument misses the point. *Id.*

Hawaii's notice statute "regulates insurance" because it places an additional obligation upon an insurer and policyholder which is triggered when an individual under a group life insurance policy becomes eligible to convert their group policy to an individual life insurance policy. For this reason, Defendants' argument that the statute fails the first prong of *Miller* because it obligates American Marine, a non-insurance entity, is not a viable argument in the Ninth Circuit.

## A. Does Hawaii's Notice Statute Substantially Affect the Risk Pooling Relationship?

"Risk pooling involves spreading losses over all the risks so as to enable the insurer to accept each risk." *Morrison*, 584 F.3d at 844. Risk transfer, risk allocation, and risk pooling are related but distinct concepts. Risk pooling—or diversification—transforms uncertain and unpredictable risks into a "highly predictable" set of obligations, based on the law of large numbers. Kenneth S.

Abraham, *Insurance Law and Regulation* 4 (6th ed. 2015). "By receiving a large number of relatively small premiums, the insurer can afford to compensate the few insureds who suffer losses. In this way, the insured no longer bears more than a small amount of his own risk—it has been transferred into a common pool into which all members of the pool contribute by paying premiums." *Morrison*, 584 F.3d at 844. Therefore, a statute effects risk pooling relationship where it "target[s] . . . insurance practices, not merely insurance companies." *Orzechowski*, 856 F.3d at 694 (citing *Morrison*, 584 F.3d at 844). For example, *Morrison* concluded that the second prong of *Miller* was satisfied because "removing the deferential standard of review would lead to a greater number of claims being paid," thereby significantly impacting the risk pooling relationship. *Id.* (citing to *Morrison*, 584 F.3d at 844–45).

Similarly here, the notice statute significantly affects the risk pooling relationship because notice is essential to an individual's ability to exercise their rights. The right created under the statute—the right to notice or an extension of time to convert a group policy into an individual policy—protects a significant benefit. Without notice an individual's policy may unwittingly lapse. Without an extension, an individual may miss the opportunity to elect to continue the relationship with the insurer. The longer the relationship, the greater the likelihood that the insured will reap the benefits under his or her policy, thus benefitting the

insured. The longer the relationship, the larger the pool becomes, assuming other factors remain the same. And, the greater the pool, the more predictable the rate of loss, thus benefitting the insurer. This exchange of risk and "spreading [of] loss over all the risks . . . enable the insurer to accept each risk," *Morrison*, 584 F.3d at 844. Therefore a notice statute significantly affects the risk pooling relationship. This reasoning is consistent with *Howard*'s determination that "notice of the conversion option can play an important role in the employee's decision whether to exercise the option" which impacts the risk relationship. *Howard*, 901 F.2d at 1158–59.

Having found that the Hawaii statute satisfies both prongs of *Miller*, the Court now concludes that right-to-notice statute applies to Plaintiffs' case and is not preempted by ERISA.

## V.    Count VI: Breach of Co-Fiduciary Duty

Plaintiffs claim that Defendants breached fiduciary duties owed to Mr. Foster by failing to provide notice pursuant to state law, and by generally denying certain benefits under the policy. (Doc. 4 at 20.)

United claims that it is not a co-fiduciary with American Marine, because its fiduciary duties extend no farther than making eligibility determinations, benefit decisions, and policy interpretations. (Doc. 12 at 27.)  The policy itself indicates that United is a fiduciary only for the purpose of "determining the amount and type

22

of benefits payable to any Insured Person in accordance with the Policy." (Doc. 21-1 at 6.) United claims that Plaintiffs offer nothing but conclusory allegations to the contrary. (Doc. 12 at 26–27.) The Court agrees.

"A person is a fiduciary with respect to a plan, and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). These duties include an obligation to discharge [the fiduciary's] responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015) (citing § 1104(a)(1)). However, an entity is not "an ERISA fiduciary merely because it administers or exercises discretionary authority over its own [insurance] business." *Pegram v. Herdrich*, 530 U.S. 211, 223 (2000). Nor is there any fiduciary obligation that requires a favorable coverage determination. *See* 29 U.S.C. § 1002(21)(A)(iii).

After dismissing Counts I and II, what remains are Plaintiffs allegations that United failed to extend the Conversion Privilege and make a favorable coverage decision under the policy. This does not state a plausible claim for breach of a fiduciary duty. Plaintiffs have not alleged any facts that United failed its duty to

act with care, skill, and prudence. It was not unreasonable for United to terminated

Mr. Foster's coverage after it had received notice from American Marine that Mr.

Foster was no longer an employee. Nor was it unreasonable for United to rely on

its retroactive billing policy to determine the extent of coverage. Nor do Plaintiffs

adequately allege that United exercised sufficient discretion or authority in the plan

administration to obtain fiduciary duties beyond those imposed by the Plan. For

this reason, United's motion to dismiss this claim is granted.

In contrast, there is no argument that American Marine is not a fiduciary.

As the Plan Administrator, American Marine is designated a fiduciary by the plain

terms of the Plan. The question here is whether Mr. Foster adequately stated facts

to support a plausible claim for breach.

Plaintiffs complain that American Marine unilaterally terminated Mr.

Foster's insurance without providing him an inkling of notice. (Doc. 4 at 7–9, 17.)

Plaintiffs allege that American Marine sent United a fax, instructing the company

to terminate coverage for Mr. Foster because Mr. Foster was no longer an

employee, but failed to provide any notice to Mr. Foster concerning his status

within the company. (Doc. 4 at 14.) Even if there is no general duty to warn

individual plan participants beyond the notice provided in the SPD (Doc. 21 at 5–

6), Plaintiffs have adequately alleged a breach of fiduciary duty in American

Marine's unilateral decision to stop making payments pursuant to the terms

24

contained in the "disability elimination period" in order for Mr. Foster to obtain the benefit of the premium waiver. (*See* Doc. 1-1 at 14.) This states a plausible claim for a breach of a fiduciary duty and the Court will allow the claim to go forward.

IT IS ORDERED that American Marine's Motion to Dismiss (Doc. 8) is DENIED.

IT IS FURTHER ORDERED that United's Motion to Dismiss (Doc. 11) is GRANTED in part and DENIED in part. Claims I and II are DISMISSED. Claims III and V will go forward and United is dismissed as a defendant from Claim VI.

DATED this 6ᵗʰ day of November, 2018.

Dana L. Christensen, Chief Judge
United States District Court