
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

ESTATE OF KIRK ANTHONY
FOSTER, through KELLY M.
FOSTER, Personal Representative for
the Estate of Kirk Anthony Foster, and
KELLY M. FOSTER, as an individual,

CV 17–165–M–DLC

Plaintiffs,

vs.

ORDER

AMERICAN MARINE SVS GROUP
BENEFIT PLAN, UNITED OF
OMAHA LIFE INSURANCE
COMPANY, AMERICAN MARINE
CORP., and JOHN DOES 1-3,

Defendants.

The Estate of Kirk Anthony Foster and Kelly M. Foster, individually and as

personal representative of the estate, ("Foster") brought this action pursuant to 29

U.S.C. § 1132(a), the Employee Retirement Income Security Act's ("ERISA")

civil enforcement provision, and 28 U.S.C. § 1331. Foster alleges that the

Defendants wrongfully denied Kelly Foster ("Kelly") life insurance benefits owed

to her as Kirk Foster's ("Kirk") named beneficiary.

The parties filed cross-motions for summary judgment (Docs. 35, 46, 55),

-1-

and Defendants American Marine SVS Group Benefit Plan and American Marine
Corporation (collectively, "American Marine") filed a motion to strike Foster's
reply brief. (Doc. 58.) The Court heard oral arguments on all motions on
November 21, 2019.

## BACKGROUND

Kirk worked for American Marine as a Health, Safety, Environmental &
Security Manager. (Doc. 41 at 2.) According to Karl Maruyama
("Maruyama"), American Marine's Payroll/Employee Manager, Kirk stopped
working for American Marine on February 1, 2016. (Doc. 36-1 at 3.) Kirk
reflected his understanding of the same when he communicated to a friend via text
message that American Marine laid him off. (Docs. 39 at 8; 39-3 at 33.) Kirk
stated that the layoff left him "basically in shock," as he had "[n]o indication [it]
was coming." (Doc. 39-3 at 33–34.) He worried about "how [he was] going to
tell Kelly" and characterized the layoff as "catastrophic." (*Id.* at 34.)
Ultimately, Kirk never discussed his termination or separation from American
Marine with Kelly. (Doc. 39 at 3.) It was on or about that same day—February
1, 2016—that esophageal cancer totally disabled Kirk, after which he was
"bedridden at home receiving Hospice Care." (Doc. 4 at 5, 17.)

Two days after the layoff, Kirk sent a text message to Richard Steady
("Steady"), with whom Kirk worked concerning his "ongoing relationship with

-2-

American Marine." (Docs. 39-3 at 42; 39 at 3.) Kirk told Steady that he was "having a difficult time adjusting from having numerous responsibilities, to being un engaged (sic) with the [American Marine] operation." (Doc. 39-3 at 42.) He asked Steady if a consultancy arrangement was possible, instead of "being adrift and cut loose from the organization." (*Id.*) Steady did not respond. (*See id.*)

After his layoff, Kirk exhausted his accumulated sick and vacation days before his employment with American Marine officially ended. (Docs. 36-1 at 4; 43-2 at 4; 61 at 5.) Accordingly, American Marine treated April 15, 2016 as Kirk's effective last day with the company (*id.*), and turned off Kirk's work email account on April 21, 2016 (Doc. 39 at 7). At Kirk's request, and after he assured Steady that it would be therapeutic to him, Kirk's work email account and phone were reactivated so he could answer his replacements' questions. (Doc. 39-3 at 44.) However, Kirk's limited, uncompensated relationship with American Marine ended on April 26, 2016, "when he could longer provide services to American Marine due to the deterioration of his physical condition."[1] (Doc. 33 at

---

[1] "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). In their preliminary pretrial statement, Foster expressly admits that, although American Marine and Kirk kept in routine contact after February 1, 2016, he only remained in this "modified" capacity until April 26, 2016, when he could no longer provide services due to his deteriorating health. (Doc. 33 at 3.) Foster is bound by this judicial admission. *See BNSF Railway Co. v. Tolz, King, Duvall, Anderson, and Assocs., Inc.*, No. CV–16–24–M–DLC, 2017 WL 1283471, at *3 (D. Mont. Apr. 5, 2017).

-3-

3.)

While he was employed with American Marine, Kirk was enrolled in its employee benefits plan ("the Plan"). (Docs. 5 at 5; 7 at 4; 34 at 4.) Defendant United of Omaha Life Insurance Company ("United") issued Group Life Policy No. GLUG-741F ("the Policy") in connection with the Plan (Doc. 34 at 5), wherein Kirk was the insured and American Marine was the policyholder (Docs. 4 at 4; 7 at 3). On February 2, 2016, the day after Kirk was laid off, American Marine's then-Vice President/Alaska Regional Manager emailed Kirk with attachments including the Life Insurance Certificate and Summary Plan Description ("Life Certificate/SPD") for the Policy. (Docs. 59-1 at 2; 63-1 at 4.) The next day, Kirk forwarded the email, including the attachment containing the Life Certificate/SPD, from his work email account to his personal email address along with the reminder: "[f]or follow up and action." (Docs. 59-3 at 2; 63-1 at 4.)

On April 26, 2016, pursuant to the Policy, Maruyama prepared and sent United an Employee Termination Report. (Doc. 36-1 at 5–6; Doc. 41 at 8.) The fax transmittal that accompanied the report requested that, due to his employment ending on April 15, 2016, Kirk be removed from the Policy's coverage as of May 1, 2016. (*Id.*) Kirk never sent the request form to United as required if he wished to continue his coverage under the Policy at his own cost. (Doc. 41 at 9.)

-4-

Kirk died on June 24, 2016. (Doc. 4 at 2.) When Kelly sought to recover the Policy proceeds in July 2016, United rejected her claim. (Doc. 4 at 9.) Foster sued the Defendants, alleging the Defendants wrongfully denied life insurance benefits owed to Kelly, violated the Hawaii notice statute, and breached their fiduciary duty. (Doc. 4 at 11–20.) Following the Defendants' respective motions to dismiss, three claims survived and are the subject of the cross-motions for summary judgment now before the Court. (*See* Doc. 23.)

Count III specifically alleges that the Defendants wrongfully denied Kirk the option of converting the Policy to an individual policy by failing to notify him of his right to do so. (Doc. 4 at 16–17.) In Count V, Foster claims that, because the Defendants failed to notify Kirk of his right to convert the Policy to an individual policy at the time he became ineligible, Foster is entitled to an extension under Hawaii law.[2] (*Id.* at 18–19.) Finally, Foster contends in Count VI that American Marine breached its fiduciary duty with respect to the Plan by failing to provide notice pursuant to state law, and by generally denying certain benefits under the Policy. (Doc. 4 at 20.)

---

[2] In its Order on the Defendants' motions to dismiss, the Court determined that Hawaii's right-to-notice statute applies and is not preempted by ERISA. (Doc. 23 at 19–22.)

-5-

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, "summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Accordingly, only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

On the other side of the coin, summary judgment is inappropriate where the parties genuinely dispute a material fact: "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, a party opposing a "properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation and quotation marks omitted).

"[W]hen parties submit cross-motions for summary judgment, each must be

considered on its own merits." *Fair Hous. Council of Riverside Co., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." (*Id.*) (quoting Charles Alan Wright et al., *Federal Practice and Procedure* vol. 10A, § 2720 (3d ed. West 2014)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## ANALYSIS

### I. Count III: Failure to Provide a Plan Benefit

Kelly alleges she was wrongfully denied a Plan benefit because American Marine and United failed to provide notice to Kirk of the termination of his life insurance coverage, thereby depriving him of the opportunity to convert the Policy after he became ineligible under the Plan. (Doc. 4 at 17.) For the following reasons, the Court finds that the undisputed facts warrant summary judgment in favor of American Marine and United.

### A. American Marine is entitled to summary judgment on Count III because it is undisputed that the Plan designated United to interpret the Plan and to pay benefits.

As already noted, Foster brought this action to recover benefits under the Plan pursuant to ERISA's civil enforcement provision. (Doc. 4 at 3.) The

specific statute involved, 29 U.S.C. § 1132(a)(1)(B), provides that:

> A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

In *Cyr*, the Ninth Circuit read no limitation as to who can be sued under the statute. *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1206 (9th Cir. 2011) (en banc). Because the text of § 1132(a)(1)(B) does not proscribe any classes of defendants that may be sued, then, "suit may successfully be brought against a defendant under this section 'as long as that party's individual liability is established.'" *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz.*, 770 F.3d 1282, 1297 (9th Cir. 2014) (quoting *Cyr*, 642 F.3d at 1207). To that end, the Department of Labor, charged with implementing and regulating ERISA, has clearly stated that where the ERISA plan allocates specific duties to specific fiduciaries, each fiduciary is responsible only for the responsibilities allocated to it. *See DeFazio v. Hollister, Inc.*, 854 F. Supp.2d 770, 801 (E.D. Cal., Apr. 5. 2012) (citing *Walker v. Nat'l City Bank*, 18 F.3d 630, 633 (8th Cir. 1994); 29 C.F.R. § 2509.75-8 (D-4)).

Where the plan insurer is "responsible for paying legitimate benefits claims, it [is] a logical defendant for an action by [a plan beneficiary] to recover benefits due to her under the terms of the plan and to enforce her rights under the terms of

-8-

the plan." *Spinedex Physical Therapy USA Inc.*, 770 F.3d at 1297 (citation and internal quotation marks omitted). And, on the other hand, where a defendant is not charged with funding an ERISA plan, "it is thus clear that [it] is not, based on responsibility to pay benefits, a proper defendant under *Cyr*." *Id.* at 1298.

Here, American Marine was the designated Plan Administrator for the Plan. (Doc. 34 at 5.) However, it argues that summary judgment is warranted on Count III because the Plan allocates to United the specific authority to approve or deny claims like Foster's. (Doc. 37 at 11.) Therefore, under *Cyr* and its progeny, American contends it is not a proper defendant on Foster's claim for failure to provide a Plan benefit. (Doc. 37 at 10–11.) In support, American Marine points to the Life Certificate/SPD's language:

> The Policyholder [American Marine] hereby designates Us [United] to be a fiduciary under the Policy solely for the purposes of:
>
> (a) determining all questions of eligibility of Insured Persons;
> (b) determining the amount and type of benefits payable to any Insured Person in accordance with the Policy; and
> (c) interpreting the Policy provisions, including those necessary to determine benefits.

(Doc. 4-1 at 36.)

In response, Foster states simply that "American [Marine] is a proper Defendant," because American Marine "did have a role in denying benefits to [Foster] as evidenced by the interlineation of the Death Benefit Claim Form, when

–9–

Richard Steady struck [American Marine's] assurance of accuracy of the information contained therein." (Doc. 38 at 16, 18.) Foster concludes that American Marine is a proper defendant by stating that "[a]t a minimum, American [Marine] acknowledges it deferred to United's decision." (*Id.* at 16.)

The Court agrees with American Marine. The Plan undisputedly designates United as the fiduciary responsible for interpreting Policy provisions, "including those necessary to determine benefits." (Doc. 4-1 at 36.) And, it is undisputed that United is responsible for paying legitimate benefits claims. (Doc. 4 at 3.) Therefore, United, not American Marine, is the proper defendant under *Cyr*, considering that United is both the designated Plan interpreter and the payor of Plan benefits.

Furthermore, although Foster points to Steady's interlineation on the Proof of Death Claim Form as evidence of American Marine's "role in denying benefits," it serves only to buttress American Marine's argument that Policy interpretation was allocated to United. Steady indeed lined through language that otherwise would have American Marine asserting that Kirk's "insurance was in force on the date of his [] death." (Doc. 38 at 18.) However, Foster fails to add that next to the interlineation, Steady noted that this determination was allocated to United ("TBD by carrier"). (Doc. 57-4 at 106.) The interlineation and accompanying note support the argument that the Plan designated United as the

-10-

entity charged with the responsibility to interpret the Policy's provisions and determine eligibility and benefits. Therefore, the interlineation fails to raise a genuine factual dispute regarding the allocation of fiduciary duties under the Plan.

Accordingly, finding a dearth of genuine factual disputes on this issue, summary judgment is warranted, and American Marine's motion for summary judgment on Count III is granted.

**B.** **Summary judgment is warranted as to United on Count III based on: (1) the undisputed adequacy of the notice of the right to convert contained in the Life Certificate/SPD; and (2) the undisputed expiration of the conversion right.**

At the motion to dismiss phase, Count III survived against United based on unanswered questions of fact as to: (1) whether Kirk was notified of his conversion privilege; and (2) when the clock began ticking on Kirk's opportunity to exercise his rights under the conversion privilege. (Doc. 23 at 9–10; *see also* Doc. 4-1 at 20.) Now, in its motion for summary judgment, United first argues that "there was no obligation on behalf of any defendant to provide notice of . . . and conversion rights to [Kirk] beyond that contained in the [Life Certificate/SPD]." (Doc. 56 at 14.) Second, it contends that the undisputed facts show that the conversion privilege expired—and went unexercised—on May 31, 2016. (*Id.* at 15–16.) Therefore, United urges the Court to reject Foster's claim in Count III that it failed to provide a Plan benefit. (*Id.* at 16.) The Court will address each

-11-

issue in turn.

### 1. The Life Certificate/SPD undisputedly spells out the right to convert the Policy.

Under ERISA, a summary plan description ("SPD") "is a disclosure meant to reasonably apprise [plan] participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). To meet its statutory obligation of "reasonabl[e] appris[al]," the SPD must contain "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." *Id.* at § 1022(b). The SPD need not explicitly deal with an individual employee's unique situation; instead ERISA demands only that the SPD explains the plan's rules "to permit the ordinary employee to recognize that certain events or actions could trigger a loss of benefits." *Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404, 1409 (9th Cir. 1989). Furthermore, where the SPD "explain[s] the rule applied to [the plan participant] in perfectly understandable terms," ERISA requires no disclosure beyond the SPD. *Id.* Finally, for certain types of employee benefits plans, "sponsors frequently take a 'consolidated' approach to plan document drafting where the plan document and the SPD take the form of a single document." *Prichard v. Metropolitan Life Ins. Co.*, 783 F.3d 1166, 1169 (9th Cir. 2015) (citing 3 ERISA PRACTICE AND LITIGATION § 12:38).

During oral argument, counsel for Foster clarified that her position is not

-12-

that Kirk was entitled to notice regarding conversion beyond the disclosures set out in what they characterize as the "policy." Instead, Foster argues that United "has provided nothing to the Court to indicate the Summary Plan Description[3] incorporated the policy." (Doc. 62 at 3.) To that end, Foster urges the Court to treat as a compilation of discrete parts the document attached to the Amended Complaint as "Exhibit 1" such that it would include, but not be limited to, a Life Insurance Certificate and an unrelated SPD. Between the Life Insurance Certificate and SPD, the argument goes, lie approximately thirty pages constituting a "policy," which provides the information about the general circumstances in which benefits could be lost, i.e., the notice language. (*See* Doc. 62 at 3, 9.) Unpacking this argument requires an analysis that resembles a snake eating its tail; however, ultimately the Court disagrees with Foster's illogical characterization of the document at issue here.

Contrary to Foster's assertion that "[t]he Certificate/SPD does not contain

---

[3] Pursuant to this Court's Order, Foster submitted a Statement of Stipulated Facts where they represented the following fact as agreed:

> A true and correct copy of the "Life Insurance Certificate and Summary Plan Description for Group Policy No. GLUG-741F" is attached as Exhibit 1 to Plaintiffs' Amended Complaint.

(Doc. 32 at 3, ¶ 7.) In their response to United's Motion for Summary Judgment, Foster peels apart this document's various parts, including two discrete parts which they designate, collectively, as "Certificate/SPD." As discussed, Foster omits the middle thirty-some pages of Exhibit 1 from this designation.

any provisions for notice or deadlines for conversion . . . the policy contains those"

(Doc. 62 at 3), it is readily apparent that United took a consolidated approach to

drafting the Plan document that governs here.   The "Certificate" not only includes

what Foster characterizes as the SPD, but it also includes the thirty pages that

precede it, which they would hold out as the separate "policy."

For example, the table of contents explicitly states that "key sections of the

Certificate" include: the certificate of insurance, employee eligibility, life

insurance benefits, payment of claims, and the summary plan description.   (Doc.

4-1 at 7.)   Furthermore, the document defines "policy" as Group Policy No.(s)

GLUG-741F, issued to American Marine by United, while the "Certificate," gives

the Policy meaning as it relates to Plan participants like Kirk:

> Benefits are effective only if you are eligible for the insurance, become
> insured and remain insured as described in this Certificate.   This
> Certificate replaces any certificate previously issued under the Policy.

(*Id.*)   United, then, uses a "certificate"—not "policy"—to lay out the terms and

conditions of an American Marine employee's eligibility for coverage under the

Policy.   (*See id.* at 3 (stating that an employee is "only entitled to insurance if [he

is] eligible in accordance with the terms of the Certificate").)

Finally, the part of the "Certificate" characterized by Foster as a stand-alone

SPD states explicitly that, "[t]his *Certificate* is [y]our ERISA Summary Plan

Description for the insurance benefits described herein."   (Doc. 4-1 at 34

-14-

(emphasis added).)    In sum, then, a logical reading of the document—including

the table of contents, the consecutive pagination, and its plain language—instructs

the Court to reject Foster's argument that United "has provided nothing to the

Court to indicate the Summary Plan Description incorporated the policy."

Instead, the Court is persuaded that the document the parties agreed to be the "Life

Insurance Certificate and Summary Plan Description for Group Policy No. GLUG-

741F" constitutes a single, integrated "Certificate," drafted to satisfy the

requirements of an SPD under ERISA.

Having concluded, then, that the Life Certificate/SPD contains the so-called

"policy" language, the Court can quickly dispose of the issue of whether it

reasonably apprised Foster of conversion rights pursuant to 29 U.S.C. § 1022(a).

Notwithstanding the semantic dispute already resolved, the parties agree—both in

their briefs and at oral argument—that the Life Certificate/SPD contains sufficient

notice of conversion rights.    *(See* Docs. 56 at 13; 62 at 3–4.)    Specifically, the

Life Certificate/SPD sets out the prerequisites for Policy eligibility (Doc. 4-1 at

11), and informs Plan participants, like Kirk, of the requirement to submit an

application for conversion coverage within 31 days after the Policy ends (*id.* at 13,

20–21).    In short, the Life Certificate/SPD explains the Plan's rules to permit an

ordinary American Marine employee to recognize that certain events, like

employment termination, could trigger a loss of benefits under the Policy.

-15-

Still, while counsel for Foster ultimately agreed at the hearing that the Life Certificate/SPD spelled out Kirk's conversion rights, he maintained that the notice was nevertheless inadequate, because Kirk was never informed of when he was terminated from American Marine—the event that triggered a loss of benefits under the Policy. However, a review of the evidence submitted in support of the cross-motions for summary judgment renders this argument unpersuasive.

American Marine's Payroll/Employee Manager states that Kirk stopped working on February 1, 2016. (Doc. 36-1 at 3.) Kirk says the same in text messages submitted as an attachment to Kelly's affidavit. (Docs. 39 at 4; 39-3 at 33 (stating, on February 1, 2016, "[j]ust found out American Marine is laying me off").) And, on February 2, 2016, Kirk conveyed his dismay at "being adrift and cut loose from the [American Marine] organization." (*Id.* at 42.) While Kirk's struggle and ultimate failure to tell Kelly about his layoff is understandable in the face of such a "shock" (*id.* at 33), it is insufficient to raise a genuine factual dispute about Kirk's knowledge of the event.

Just as no genuine dispute exists that Kirk knew about his February 1, 2016 layoff, Foster fails to raise a genuine dispute that April 15, 2016 constituted Kirk's effective last day with American Marine. Foster points to an email in which Kirk asked about the company's position on his date of disability (Doc. 39-4), which is not at issue here, to support the otherwise bald allegation that American Marine

-16-

and Kirk never agreed about an effective termination date. (Doc. 39 at 6 (citing Doc. 39-4 at 1).) However, the undisputed facts lead to a contrary conclusion. Foster admits that:

> Although [Kirk] was unable to work as of February 1, 2016, American Marine continued his employment while he exhausted 35 accumulated sick days and 20 accumulated vacation days.

(Doc. 61 at 5.) Based on this arrangement, American Marine's Payroll/Employee Manager alleges that the employment continuation ended on April 15, 2016, which in turn, constituted Kirk's effective last day. (Docs. 36-1 at 4; 43-2 at 4; 61 at 5.) It is undisputed that after this date, American Marine deactivated Kirk's work email account (Doc. 39 at 7); although Kirk asked for it to be reactivated to help his replacements, no one disputes that Kirk ceased acting even in this uncompensated[4] capacity by April 26, 2016 (Doc. 33 at 3). And, American Marine sent United an "Employee Termination Report" stating that Kirk's last day was April 15, 2016 and requested that he be removed from coverage under the Policy effective as of May 1, 2016. (Docs. 4 at 7; 36-1 at 5–6.)

Foster's bare denials regarding Kirk's knowledge of his termination from American Marine fail to raise a genuine issue for trial. *See Anderson*, 477 U.S. at

---

[4] On the page entitled "Employee Eligibility," the Life Certificate/SPD defines an "employee" to mean "a person who receives compensation from the from the Policyholder for work performed for the Policyholder." (Doc. 4-1 at 11.) Therefore, pursuant to the plain language of the Life Certificate/SPD, it is undisputed that Kirk was no longer American Marine's employee after April 15, 2019, regardless of whether his work email account was active.

-17-

248.    The undisputed evidence demonstrates that Kirk knew on February 1, 2016

that American Marine laid him off, but the company would not effectuate his

termination for payroll and benefits purposes until he exhausted his accumulated

sick and vacation days.    Accordingly, the Court finds no genuine factual dispute

exists as to whether Kirk knew American Marine treated April 15, 2016 as his

effective last day.    And, in any event, Foster agrees that Kirk ceased all informal

communication with American Marine by April 26, 2016.    As discussed above,

the Life Certificate/SPD's language adequately explained the Plan's rules to permit

Kirk to recognize that his failure to work for American Marine could trigger a loss

of Plan benefits.

        Finally, the Court turns to a purportedly genuine dispute raised by Foster in

support of summary judgment.    (Docs. 48 at 3; 53 at 2, 5.)    Foster asserts that

summary judgment is warranted due to a dearth of evidence that Kirk received "a

copy of the policy beyond the four [-] page Summary Plan Description."[5]    (Doc.

53 at 5.)    However, the record contradicts this assertion.

        Specifically, in the Amended Complaint, Foster claims that the Defendants,

---

[5] United also argues that American Marine, as the designated Plan Administrator (*see* Doc. 32 at
3), bore the responsibility for providing Kirk with the Life Certificate/SPD (Doc. 56 at 14 (citing
29 U.S.C. § 1024(b)(1))).    Therefore, any failure to communicate the conversion right falls to
American Marine, not United.    However, the Court finds that: (1) the undisputed facts show that
the Life Certificate/SPD adequately communicates rights under the Policy; and (2) that no
genuine factual dispute exists regarding Kirk's receipt of the Life Certificate/SPD.    As such, the
Court need not reach United's secondary argument on this issue.

through the Life Certificate/SPD, "represented to Kirk Anthony Foster his life insurance premiums would be waived as provided" by the Life Certificate/SPD and that he complied with the Life Certificate/SPD's requisites.    (Doc. 4 at 12–13.) Foster further alleges that, through the Life Certificate/SPD, United and American Marine "jointly represented to Kirk Anthony Foster" that he could elect the conversion privilege if he lost eligibility for coverage.    (Doc. 4 at 16.)    Notably, the pages from the Life Certificate/SPD containing the language that Kirk admittedly relied on and complied with are contained in the "policy . . . beyond the four [-] page Summary Plan Description."    (*See* Doc. 4 at 13 (citing pages 13 and 14 of the Life Certificate/SPD, when the so-called "four-page Summary Plan Description" is found on pages 34–37).)    In other words, Foster asserts on one hand that Kirk relied on and complied with representations in the language of the Life Certificate/SPD; on the other hand, Foster contends the record lacks any evidence establishing that Kirk ever received the so-called "policy" pages containing that very same language.

Therefore, unfortunately for Foster, the Amended Complaint cannibalizes this argument for summary judgment, because it establishes that Kirk "received a copy of the policy beyond the four [-] page Summary Plan Description."    (*See* Doc. 53 at 5.)    Furthermore, because the Defendants reasonably relied upon the factual allegations in the Amended Complaint as true, they did not endeavor to

-19-

independently establish that Kirk received the Life Certificate/SPD. (Doc. 59 at 7, n.1.) Nevertheless, in response to Foster's argument regarding a lack of evidence on that point, American Marine presented an affidavit showing that Kirk emailed the entire Life Certificate/SPD to himself on February 3, 2016. (Doc. 63-1.) While the Court views the affidavit with interest, it finds it unnecessary. As noted above, Foster's Amended Complaint establishes that Kirk received the Life Certificate/SPD.

Accordingly, reviewing the evidence submitted in support of each cross-motion and considering the parties' agreement that the Life Certificate/SPD fully set out Kirk's right to convert, the Court finds that no genuine factual dispute exists for trial as to whether Kirk was notified of his rights. The Court turns, then, to whether a genuine dispute exists about whether those rights went unexercised.

### 2. *The right to convert coverage under the Policy undisputedly expired without action from Foster.*

Under the conversion privilege, the Policy requires Plan participants to submit a written request and premium payment within 31 days after coverage ends. (Doc. 4-1 at 15–16, 20–21.) As the Life Certificate/SPD spells out, coverage under the Policy ends "the day any premium contribution for [the Plan participant's] insurance is due and unpaid" or "the last day of the Policy month in which the day [the Plan participant] is no longer eligible." (*Id.* at 13.) A Plan

-20-

participant is no longer eligible for coverage under the Policy when his "employment with the Policyholder [American Marine] ends." (*Id.*)

Using either trigger—premium nonpayment by American Marine or when Kirk's employment ended—the undisputed facts show that the clock began ticking on Kirk's right to convert the Policy when, after April 30, 2016, American Marine quit paying his premium and he became ineligible for coverage. First, United billed American Marine for Policy premiums several weeks in advance of each Policy month; therefore, the bill for May included the premium for Kirk, because United had not yet received the April 26, 2016 Employee Termination Report. (Doc. 61 at 6.[6]) So, when United billed American Marine in May 2016 for the June 2016 Policy month, it included a credit for the premium payment previously billed with respect to Kirk. (*Id.* at 7.[7]) Accordingly, no genuine factual dispute exists that American Marine only paid Kirk's Policy premium through midnight on April 30, 2016. (*Id.* at 8.[8]) Second, Kirk lost eligibility for coverage when his employment with American Marine ended in April 2016, as previously discussed.

The undisputed facts show that, pursuant to the language contained in the

---

[6] Foster disputes this fact only insofar as they argue that the payment made for May 2016— due only to United's advance-billing procedures—should have been applied to the Policy's "Waiver of Premium" provision. This alleged factual dispute is inapposite, however, as the Court previously dismissed Foster's claim regarding the Waiver of Premium benefit. (Doc. 23 at 6–8.)
[7] Foster makes the same argument as discussed in n.6, *supra*, and it is equally inappropriate here.
[8] Again, Foster's Premium Waiver argument is inappropriate at this stage, as discussed in n.6, *supra*.

-21-

Life Certificate/SPD, the clock for Kirk to convert began ticking on May 1, 2016. (Doc. 4-1 at 15–16, 20–21.) The parties agree he failed to exercise his right before it expired on May 31, 2016.[9] (Doc. 61 at 13.) Therefore, when United rejected Kelly's claim for proceeds under the Policy in July 2016, it did not wrongfully fail to provide a Plan benefit—the opportunity to exercise conversion rights had simply passed.

So, because the undisputed facts show that Kirk was notified of his conversion rights and because Foster failed to act within the prescribed time period, United is entitled to judgment as a matter of law. Accordingly, the Court grants United's summary judgment motion as to Count III.

## II.    Count V: Hawaii Notice Law

Because Foster alleges that the Defendants failed to provide Kirk with notice of his right to convert his coverage under the Policy, pursuant to Hawaii's[10] Insurance Code, Foster is entitled to an extension to convert. (Doc. 4 at 18–19.) The relevant statute provides that if an individual insured under a group life policy becomes entitled to convert it,

> and if the individual is not given notice of the existence of such right at

---

[9] Kirk died on June 24, 2016. (Doc. 4 at 2.) Therefore, he died outside the 31-day period after his Policy coverage ended, thereby rendering Foster ineligible under the following provision:
> If You die within the 31-day period after insurance ends, We will pay the amount of group life insurance You were entitled to convert.

(Doc. 4-1 at 21.)

[10] Hawaii law governs the Policy. (Doc. 12-1 at 12.)

least fifteen days prior to the expiration date of such period, then, in such event the individual shall have an additional period within which to exercise the right . . . Written notice presented to the individual . . . shall constitute notice for the purposes of this section.

Haw. Rev. Stat. Ann. § 431:10D-214. The Court agrees with United's understanding of the statute, which Foster does not dispute. (Docs. 56 at 18–19; 62 at 14–15.) That is, the statute's protection is not triggered unless an individual is not given notice of his conversion rights.

Here, and as discussed extensively already, it is undisputed that the Life Certificate/SPD adequately set out Kirk's right to convert the Policy and the deadline by which he had to exercise it. *(See* Doc. 4-1 at 17, 20–21.) Furthermore, no genuine factual dispute exists that Kirk was provided the Life Certificate/SPD and relied upon it. *See* IB1, *supra.* Foster's bare allegation that "it is impossible to determine when the Hawaiian 15 [-] day notice provision began" (Doc. 62 at 14) is defeated by allegations in the Amended Complaint. There, Foster alleges that the provisions contained in Life Certificate/SPD formed the basis for Kirk's conduct on February 1, 2016. (Doc. 4 at 13.) So, at the latest, Kirk had been provided the Life Certificate/SPD by February 1, 2016.

Accordingly, with no genuine factual dispute that Kirk's opportunity to exercise his conversion right expired on May 31, 2016, the Court concludes that Kirk had notice of his right more than fifteen days before his opportunity expired,

-23-

so the extension under Hawaii law was not triggered.    Therefore, the Defendants'

respective motions for summary judgment as to Count V are granted.

### III.    Count VI: American Marine's Breach of Fiduciary Duty

Foster alleges that American Marine breached its fiduciary duty by failing to

timely inform Kirk that he lost eligibility under the Policy after April 30, 2016.

(Doc. 4 at 19–20.)    In so doing, American Marine allegedly deprived Kirk "of his

right to timely seek conversion benefits."    (Doc. 4 at 20.)    In its motion for

summary judgment, American Marine points to the language of the Life

Certificate/SPD and argues "that there is no duty to inform plan participants

concerning the effect of plan terms, beyond the contents of an SPD."    (Doc. 37 at

14.)

ERISA "establish[es] standards of conduct, responsibility, and obligation for

fiduciaries of employee benefit plans[.]"    29 U.S.C. §1001(b).    A fiduciary must

"discharge [its] duties with respect to a plan solely in the interest of the participants

and beneficiaries."    *Id.* § 1104(a)(1).    In the Ninth Circuit, an ERISA fiduciary

has an obligation to convey complete, thorough, and accurate information that is

material to a participant's circumstance.    *Farr v. U.S. West Communs., Inc.*, 151

F.3d 908, 914–915 (9th Cir. 1998).    And, the parties here agree that as a general

rule, the law imposes no duty to inform plan participants concerning the effect of

plan terms beyond the contents of an SPD.    (Docs. 37 at 14; 38 at 23 (citing to

*Vest v. Resolute FP US Inc.*, 905 F.3d 985, 989 (6th Cir. 2018)).)

As already discussed, no factual dispute exists as to whether the information contained within the Life Certificate/SPD completely and accurately conveys information to Plan participants about their right to convert.    Foster bases Count VI on the now-familiar propositions that American Marine failed to notify Kirk of his termination and that the Life Certificate/SPD does not include the "policy" language everyone agrees provides adequate notice.    (Doc. 38 at 19, 21.) However, as previously explained, neither argument raises a genuine factual dispute for trial, and the Court will not repeat its reasoning and conclusions.

Accordingly, because no genuine factual dispute exists as to Kirk's receipt of the Life Certificate/SPD or the Life Certificate/SPD's adequate provision of notice of rights, Foster's claim that American Marine breached its fiduciary duty fails as a matter of law.    The Court grants American Marine's motion for summary judgment as to Count VI.

## ORDER

Having found no genuine material factual disputes and determining that the Defendants are entitled to judgment as a matter of law, IT IS ORDERED that:

(1)    American Marine's motion for summary judgment (Doc. 35) is GRANTED;

(2)    United's motion for summary judgment (Doc. 55) is GRANTED;

(3)     Foster's motion for summary judgment (Doc. 46) is DENIED;

(4)     American Marine's motion to strike (Doc. 58) is DENIED AS

MOOT;

(5)     United's motion to strike (Doc. 65) is DENIED AS MOOT;

(6)     This matter is DISMISSED WITH PREJUDICE, and the Clerk of

Court is instructed to enter judgment in favor of the Defendants.

DATED this 20th day of December, 2019.

Dana L. Christensen, Chief Judge
United States District Court