IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ESTATE OF KIRK ANTHONY FOSTER, through KELLY M. FOSTER, Personal Representative for the Estate of Kirk Anthony Foster, and KELLY M. FOSTER, as an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN MARINE SVS GROUP BENEFIT PLAN, AMERICAN MARINE CORP, and JOHN DOES 1–3,<br><br>Defendants. | CV 17–165–M–DLC<br><br>ORDER |

Before the Court are the parties' cross-motions for summary judgment. (Docs. 90, 93.) The motions will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Estate of Kirk Anthony Foster and Kelly M. Foster, individually and as personal representative of the estate ("Plaintiffs" or "Foster"), brought this action pursuant to 29 U.S.C. § 1132(a), the Employee Retirement Income Security Act's ("ERISA") civil enforcement provision. (Doc. 4.) Foster alleged that American Marine SVS Group Benefit Plan, United of Omaha Life Insurance Company, and American Marine Corp. (collectively, "Defendants") wrongfully denied Kelly

-1-

Foster ("Kelly") life insurance benefits owed to her as Kirk Foster's ("Kirk") named beneficiary. (*Id.*) The Court dismissed Claims I and II of the complaint and permitted Claims III, V, and VI to go forward with United dismissed as a defendant from Claim VI.¹ (Doc. 23.) The parties filed cross-motions for summary judgment on the remaining claims. (Docs. 35, 46, 55.)

The factual background of this case is copied from the Court's order on the parties' first motions for summary judgment:

> Kirk worked for American Marine as a Health, Safety, Environmental & Security Manager. (Doc. 41 at 2.) According to Karl Maruyama ("Maruyama"), American Marine's Payroll/Employee Manager, Kirk stopped working for American Marine on February 1, 2016. (Doc. 36-1 at 3.) Kirk reflected his understanding of the same when he communicated to a friend via text message that American Marine laid him off. (Docs. 39 at 8; 39-3 at 33.) Kirk stated that the layoff left him "basically in shock," as he had "[n]o indication [it] was coming." (Doc. 39-3 at 33–34.) He worried about "how [he was] going to tell Kelly" and characterized the layoff as "catastrophic." (*Id.* at 34.) Ultimately, Kirk never discussed his termination or separation from American Marine with Kelly. (Doc. 39 at 3.) It was on or about that same day—February 1, 2016—that esophageal cancer totally disabled Kirk, after which he was "bedridden at home receiving Hospice Care." (Doc. 4 at 5, 17.)
>
> Two days after the layoff, Kirk sent a text message to Richard Steady ("Steady"), with whom Kirk worked concerning his "ongoing relationship with American Marine." (Docs. 39-3 at 42; 39 at 3.) Kirk told Steady that he was "having a difficult time adjusting from having numerous responsibilities, to being un engaged (sic) with the [American Marine] operation." (Doc. 39-3 at 42.) He asked Steady if a consultancy arrangement was possible, instead of "being adrift and

---

¹ The Complaint did not include a Claim IV.

cut loose from the organization." (*Id.*)  Steady did not respond. (*See id.*)

After his layoff, Kirk exhausted his accumulated sick and vacation days before his employment with American Marine officially ended.  (Docs. 36-1 at 4; 43-2 at 4; 61 at 5.)  Accordingly, American Marine treated April 15, 2016 as Kirk's effective last day with the company (*id.*), and turned off Kirk's work email account on April 21, 2016 (Doc. 39 at 7).  At Kirk's request, and after he assured Steady that it would be therapeutic to him, Kirk's work email account and phone were reactivated so he could answer his replacements' questions.  (Doc. 39-3 at 44.)  However, Kirk's limited, uncompensated relationship with American Marine ended on April 26, 2016, "when he could longer provide services to American Marine due to the deterioration of his physical condition."  (Doc. 33 at 3.)

While he was employed with American Marine, Kirk was enrolled in its employee benefits plan ("the Plan").  (Docs. 5 at 5; 7 at 4; 34 at 4.)  Defendant United of Omaha Life Insurance Company ("United") issued Group Life Policy No. GLUG-741F ("the Policy") in connection with the Plan (Doc. 34 at 5), wherein Kirk was the insured and American Marine was the policyholder (Docs. 4 at 4; 7 at 3).  On February 2, 2016, the day after Kirk was laid off, American Marine's then-Vice President/Alaska Regional Manager emailed Kirk with attachments including the Life Insurance Certificate and Summary Plan Description ("Life Certificate/SPD") for the Policy.  (Docs. 59-1 at 2; 63-1 at 4.)  The next day, Kirk forwarded the email, including the attachment containing the Life Certificate/SPD, from his work email account to his personal email address along with the reminder: "[f]or follow up and action."  (Docs. 59-3 at 2; 63-1 at 4.)

On April 26, 2016, pursuant to the Policy, Maruyama prepared and sent United an Employee Termination Report.  (Doc. 36-1 at 5–6; Doc. 41 at 8.)  The fax transmittal that accompanied the report requested that, due to his employment ending on April 15, 2016, Kirk be removed from the Policy's coverage as of May 1, 2016.  (*Id.*)  Kirk never sent the request form to United as required if he wished to continue his coverage under the Policy at his own cost.  (Doc. 41 at 9.)

> Kirk died on June 24, 2016. (Doc. 4 at 2.) When Kelly sought to recover the Policy proceeds in July 2016, United rejected her claim. (Doc. 4 at 9.) Foster sued the Defendants, alleging the Defendants wrongfully denied life insurance benefits owed to Kelly, violated the Hawaii notice statute, and breached their fiduciary duty. (Doc. 4 at 11–20.) Following the Defendants' respective motions to dismiss, three claims survived . . . . (*See* Doc. 23.)
>
> Count III specifically alleges that the Defendants wrongfully denied Kirk the option of converting the Policy to an individual policy by failing to notify him of his right to do so. (Doc. 4 at 16–17.) In Count V, Foster claims that, because the Defendants failed to notify Kirk of his right to convert the Policy to an individual policy at the time he became ineligible, Foster is entitled to an extension under Hawaii law. (*Id.* at 18–19.) Finally, Foster contends in Count VI that American Marine breached its fiduciary duty with respect to the Plan by failing to provide notice pursuant to state law, and by generally denying certain benefits under the Policy. (Doc. 4 at 20.)

*Est. of Foster ex rel. Foster v. Am. Marine SVS Grp. Benefit Plan*, No. CV 17-165-M-DLC, 2019 WL 7020192, at *1–2 (D. Mont. Dec. 20, 2019) (footnotes omitted), *aff'd in part, rev'd in part and remanded*, 840 F. App'x 170 (9th Cir. 2021). The Court granted Defendants' motions for summary judgment, holding that (1) as to Count III, American Marine owed no fiduciary duty to Foster because United was the designated Plan interpreter and the payor of Plan benefits; (2) as to Count III, United provided adequate notice of the right to convert contained in the Life Certificate/SPD and it was undisputed that the conversion right expired unexercised; (3) as to Count V, it was undisputed that Kirk received adequate notice of the right to conversion more than fifteen days prior to the expiration date

of the conversion period; and (4) as to Count VI, American Marine did not breach any fiduciary duty by failing to timely inform Kirk that he lost eligibility under the Policy after April 30, 2016, because the Life Certificate/SPD provided sufficient information about the right to convert. *Id.* at *4–10.

The United States Court of Appeals for the Ninth Circuit affirmed the Court's grant of summary judgment on Count III as to United, Count V, and Count VI to the extent it was asserted against United. *Est. of Foster ex rel. Foster v. Am. Marine SVS Grp. Benefit Plan*, 840 F. App'x 170, 174 (9th Cir. 2021). The court of appeals reversed the Court's grant of summary judgment to American Marine on Counts III and VI, holding that "American Marine was required to provide further explanation under the circumstances." *Id.* at 173. The court of appeals explained:

> Although Kirk had notice of the existence of the conversion policy, the Life Certificate/SPD is ambiguous as to the exact date that the thirty-one-day conversion clock started for Kirk. It could have been February 29, or "the last day of the month in which he was laid off." It could have been April 30, the last day of the month when Kirk stopped being paid. Or, it could have been an even later date, so long as American Marine continued paying premiums and Kirk remained totally disabled. This ambiguity was magnified when American Marine continued paying Kirk's life insurance premiums and his LTD insurance premiums after February—the month when Kirk was laid off—which may otherwise have been the most likely understanding of his month of termination. The Life Certificate/SPD thus provided incomplete information to Kirk as to when his life insurance benefits would end and the conversion clock would start. Meanwhile, American Marine

knew exactly when Kirk's benefits would expire because it controlled when it stopped making premium payments. Under the circumstances, American Marine had an obligation to paint a more complete picture for Kirk.[2]

We find further support for this conclusion in the evidence of Kirk's relationship with American Marine after he was laid off, and especially in American Marine's understanding that Kirk was severely ill. American Marine's contact with Kirk lasted until within a week of Kirk's physical condition deteriorating to the point that he could no longer provide volunteer services to the company, or April 26, 2016. Given American Marine's awareness of his circumstances, the company should have realized that Kirk would be interested in maintaining his life insurance coverage and would need information about precisely when he would need to act to do so.

We therefore reverse insofar as the district court held that American Marine had no duty to notify Kirk that his life insurance coverage would end on April 30, 2016, beyond sending him the Life Certificate/SPD. Although Kirk knew about the conversion period because he had the Life Certificate/SPD—and the evidence strongly suggests that Kirk knew he would stop receiving salary payments on April 15—these facts alone do not compel the conclusion that Kirk knew American Marine would stop paying his life insurance premiums in April. A genuine issue of material fact thus exists as to whether Kirk knew when his coverage would expire.

*Id.* at 173–74. On remand, and on both parties' motions for summary judgment, the narrow question before the Court is whether American Marine failed to provide sufficient information to Kirk concerning the end of his life insurance benefits and

---

[2] The record contains a memo dated April 19, 2016, that American Marine apparently sent to Kirk and that included a partially completed portability coverage application, but Foster says Kirk never received it. Even if American Marine is correct that the mailbox rule would apply to the memo, that rule creates a rebuttable presumption that Foster could potentially overcome on remand. *See Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961, 965 (9th Cir. 2001). This issue is one that would need to be litigated in the first instance in the district court.

thereby denied him a benefit—the right to convert the Policy to an individual policy (the "Conversion Privilege")—and/or breached its fiduciary duty.

American Marine submitted little new evidence in support of its current motion for summary judgment. Maruyama attested in a new affidavit that "Kirk was informed that American Marine would have to lay him off" on February 1, 2016, but Kirk and Steady made "[a]n arrangement . . . whereby Kirk would be permitted to exhaust any accumulated sick days and vacation days before his employment with American Marine *effectively* ended." (Doc. 91-1 at 3.) According to Maruyama, "[i]t was ultimately agreed that Kirk's *effective* last day of employment with American Marine would be April 15, 2016, after Kirk had exhausted 35 accumulated sick days from February 1, 2016 to March 18, 2016, and 20 accumulated vacation days from March 18, 2016 to April 15, 2016. Because he remained an eligible employee, American Marine continued to pay the monthly premiums on Kirk's Group Life Policy during that period of time." (*Id.*) Steady also attested in a new affidavit that he informed Kirk by telephone "that his *effective* last day of employment with American Marine would be April 15, 2016," after Kirk exhausted his accumulated sick leave and vacation days. (Doc. 91-2 at 3.) Plaintiffs submitted no new evidence in support of their current motion for summary judgment or in opposition to American Marine's motion.

## STANDARD OF REVIEW

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In other words, summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  Accordingly, only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered.  *Id.* at 247–48.

Summary judgment is inappropriate where the parties genuinely dispute a material fact: "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, a party opposing a "properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation omitted). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* (quoting 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2720 (3d ed. West 2014)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## ANALYSIS

In Count III, Plaintiffs allege that American Marine failed to provide notice to Kirk of the termination of his life insurance benefit as of April 15, 2016 and failed to provide Kirk the opportunity to claim the Conversion Privilege provided in the Policy. (Doc. 4 at 16–17.) In Count VI, Plaintiffs allege that American Marine breached its fiduciary duty to Kirk by failing to timely determine and inform him that he was no longer eligible for life insurance proceeds under the Policy, which deprived him of the right to the proceeds or the right to exercise the Conversion Privilege. (*Id.* at 19–20.) On the evidence before the Court, each Count turns on a single factual question: whether American Marine provided

notice to Kirk, or Kirk otherwise knew, of the termination of his life insurance benefit, which would trigger the 31-day time period for exercising the Conversion Privilege. *Est. of Foster*, 840 F. App'x at 174.

American Marine contends that it is now undisputed that Kirk was aware that his employment would end on April 15, 2016, and, by extension, he was aware that the time for converting his life insurance policy would begin to run from April 30, 2016, which was the last day of the Policy month in which his employment with American Marine ended. (Doc. 92 at 11–12.) American Marine acknowledges the ambiguity concerning Kirk's coverage under the Policy highlighted by the Ninth Circuit: The Life Certificate/SPD provides that insurance will end for employees who have been laid off on the last day of the Policy month in which the employee has been laid off or goes on a leave of absence approved by the Policyholder. (*Id.* at 12.) But American Marine argues that the evidence shows that Kirk was informed on February 1, 2016 that he was *going to be* laid off after exhausting his accumulated sick leave and vacation days, and he thus knew he was still employed and receiving compensation from American Marine through April 15, 2016. (*Id.* at 12–13.)[3]

---

[3] Both parties also briefed the issue of the law of the case doctrine. The Court concludes that law of the case doctrine is irrelevant to deciding the narrow issue before it on remand, as clearly articulated by the court of appeals: "whether Kirk knew when his coverage would expire." *Est. of Foster*, 840 F. App'x at 174.

-10-

Plaintiffs contend that Defendants submitted contradictory affidavits by Maruyama stating that Kirk ceased working for American Marine on February 1, 2016, (Doc. 36-1 at 2), but later stating that Kirk continued to work remotely for American Marine until April 15, 2016, (Doc. 91-1 at 3–4). (Doc. 94 at 10.) Plaintiffs argue that the exhaustion of Kirk's sick leave and vacation days did not constitute active employment, he was laid off on February 1, 2016, and he did not receive notice as to when his insurance coverage would lapse. (*Id.* at 9–10.) Plaintiffs further argue that there is no evidence in the Administrative Record that establishes Kirk had any notice from which he could calculate the time limit for exercising his Conversion Privilege. (*Id.* at 11.) They assert that Kelly's affidavit establishes that American Marine did not provide this notice to Kirk, and that American Marine has failed to produce any evidence to the contrary. (*Id.* at 13–14; Doc. 98 at 8.)

Taking American Marine's motion for summary judgment first, the Court views the evidence in the light most favorable to Plaintiffs. The Ninth Circuit panel correctly observed that "the evidence strongly suggests that Kirk knew he would stop receiving salary payments on April 15." *Est. of Foster*, 840 F. App'x at 174. However, viewing the evidence in the light most favorable to Plaintiffs, strong suggestion is not sufficient to warrant summary judgment for American

-11-

Marine. From Plaintiffs' perspective, Kirk's coverage may have ended on the last day of February, which arguably was the month in which he was no longer "Actively Employed" as defined by the Policy or was "laid off or [went] on a leave of absence approved by the Policyholder." (Doc. 4-1 at 11, 13; Doc. 36-1 at 2 ("Kirk ceased working with American Marine on February 1, 2016.")). *But see* Doc. 4-1 at 11 (defining active employment to include a day of vacation provided the employee was actively working on the last preceding regular work day); *see also Tester v. Reliance Standard Life Ins. Co.*, 228 F.3d 372, 376 (4th Cir. 2000) (observing absurdity of interpretation of life insurance plan that would terminate an employee's coverage each time employee was out on sick leave).) Or it may have ended in April, when he exhausted his sick leave and vacation days, his official employment with American Marine effectively ended, and he stopped receiving salary payments. (Doc. 4-1 at 13; Doc. 36-1 at 3; Doc. 91-1 at 3–4.) Or—although the evidence in support of this assertion is thin—Kirk may have believed he continued to be employed by American Marine until his death. (Doc. 39 at 2–4.) The next question presented on this motion for summary judgment, then, is whether there is any dispute of material fact that American Marine provided notice of the termination of his life insurance benefits.

The Court rejects Plaintiffs' argument that there is no evidence in the record that American Marine provided notice to Kirk of the termination of his life insurance benefits. American Marine has maintained throughout this litigation that Maruyama sent Kirk a Mutual of Omaha Term Life Portability Request Form via First Class mail to the Missoula address to which Kirk's bi-weekly pay stubs were sent. (Doc. 36-1 at 3.) The form was not returned to the American Marine return address on the envelope as undeliverable. (*Id.* at 4.) Maruyama had "completed numerous portions of the Form," including Kirk's April 15, 2016 date of employment termination, and the Form stated that Mutual of Omaha must receive the executed form within 31 days of the date coverage under the group plan expired. (*Id.* at 4, Ex. 1.) A copy of this mailing was filed in a "Mutual of Omaha – Alaska file located at American Marine's Honolulu office" and would not have been filed unless the original had been mailed. (*Id.* at 4.) Plaintiffs do not appear to dispute that, if mailed and received, this document would have provided sufficient notice to Kirk that his life insurance benefits would end unless he exercised the Conversion Privilege within 31 days of April 30, 2016.[4]

---

[4] Plaintiffs apparently attach import to the fact that this document was not in the Administrative Record. However, they do not explain why this fact is relevant to the Court's resolution of the motions for summary judgment, and Plaintiffs' counsel averred that "United of Omaha has possession of the Administrative Record[,]" (Doc. 40 at 2), which suggests a simple explanation for the document's omission from the Administrative Record: United of Omaha did not possess this record reflecting communications exclusively between American Marine and Kirk. The

-13-

Regardless whether the rebuttable presumption of receipt established by the common law mailbox rule applies, the result is the same. *See Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 962 (9th Cir. 2001). At this summary judgment stage, Plaintiffs have produced sufficient evidence to create a genuine dispute of material fact as to whether the Form was received. Kelly's affidavit states that she was solely responsible for picking up Kirk's mail in the Missoula mailbox during 2016; she reviewed all mail sent to the Missoula mailbox; her custom was to "open, read, and address the important letters, especially those from American Marine, medical bills, [and] legal and insurance-related correspondence"; she did not lose, misplace, or throw away mail; neither American Marine nor United provided the Portability Request Form or any other document "advising [Kirk] of the date of termination of coverage creating a 31-day conversion right of his life insurance benefit" to Kirk or Kelly; and Kelly denies that she received the Form or any similar notice. (Doc. 39 at 5–6, 9–10.) Construing this evidence in the light most favorable to Plaintiffs, it is sufficient to show a genuine issue of material fact concerning whether Kirk or Kelly received notice of the termination of his life insurance coverage, regardless whether the

---

Court does not consider the document's omission from the Administrative Record relevant to the resolution of these motions.

mailbox rule applies.[5]  *See Schikore*, 269 F.3d at 964 (describing "probative evidence of non-receipt" that can overcome the mailbox rule presumption").  Thus, on American Marine's motion for summary judgment, there remains a genuine dispute of material fact as to whether American Marine provided sufficient notice or Kirk otherwise knew when American Marine would terminate his life insurance benefits, triggering the start of the period for exercising his Conversion Privilege. American Marine's motion for summary judgment must be denied.

Turning to Plaintiffs' motion for summary judgment, the Court views the evidence in the light most favorable to American Marine.  The evidence discussed above concerning the mailing of the Portability Form is sufficient to create a genuine dispute of material fact concerning whether American Marine provided notice to Kirk that his life insurance benefits terminated in April 2016.  Moreover, there is evidence that indicates that Kirk continued working for American Marine after February 1, 2016 by assisting his successors with the transition well into April 2016, that he was informed that his employment and salary payments would end on April 15, 2016, and that he knew as of April 21, 2016 he would no longer

---

[5] The Court does not conclude that Plaintiffs have conclusively rebutted the mailbox rule presumption, and no party is precluded from arguing that the mailbox rule applies or presenting further evidence concerning application or rebuttal of the presumption at trial.  The facts adduced at this stage are sufficient to create a genuine dispute of material fact concerning whether Plaintiffs received the Portability Request Form, and that fact may be resolved at trial, taking into consideration any other relevant evidence not presented to the Court at this stage and the credibility of the witnesses.

receive a salary or health insurance benefits for any further transition assistance he provided, any or all of which could lead a factfinder to conclude that Kirk knew he was still employed and still receiving life insurance benefits until April 2016 and thereby knew he would have to exercise the Conversion Privilege within 31 days after April 30. (*E.g.*, Doc. 39-3 at 28 ("I'm listed as disabled not unemployed."), 33 ("Just found out American Marine is laying me off. . . . Guess the plan is to go on Sick Leave phasing in to long term disability."), 48 ("Brenda said that you have been laid off?" "Not exactly, being put on Sick Leave."), 42 (sending a message to Richard Steady on February 3, 2016 concerning medical insurance coverage and use of accrued vacation time for an additional week of salary), 44 (asking Richard Steady on April 21, 2016 to restore phone and email service "so that I can support project operations by answering questions" and stating "it doesn't cost you anything" and "[t]he only benefit I get is that it is therapeutic in the since [sic] that I am still involved"); Doc. 91-2 at 2–4.) Accordingly, there is a genuine dispute of material fact concerning whether Kirk knew that the termination of his life insurance benefits occurred in April 2016, and Plaintiffs' motion for summary judgment must be denied.

## CONCLUSION

IT IS ORDERED that American Marine's Motion for Summary Judgment (Doc. 90) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 93) is DENIED.

IT IS FURTHER ORDERED that the Court shall hold a telephonic scheduling conference with the parties on Tuesday, October 26, 2021 at 10:30 a.m. Counsel will be advised of the dial-in information prior to the conference.

DATED this 20th day of October, 2021.

_____
Dana L. Christensen, District Judge
United States District Court